## UNITED STATES BANKRUPTCY COURT
### District of Colorado

FILED
KENNETH S. GARDNER, CLERK

2019 MAR -8 P 12:57

U.S. BANKRUPTCY COURT
DISTRICT OF COLORADO

In re:     MATTHEW CURTIS WITT

       Debtor.

Address:     2792 Greatwood Way
          Highlands Ranch, CO 80126

SSN:     XXX-XX-4130

|                                      |
| Case No.                             |
| 17-17630-MER                         |
|                                      |
| Chapter                              |
| 7                                    |
|                                      |
|                                      |

---

## EX PARTE MOTION FOR 2004 ORDER FOR EXAMINATION BY NOEL WEST LANE III PURSUANT TO FED. R BANKR. P. 2004 AND 9016, AND L.B.R. 2004-1 AND FED.R.CIV.P. 45

---

Noel West Lane III, ("Lane") submits the following Ex Parte Motion for 2004 Order Pursuant to Fed.R.Bankr.P. 2004, 9016, L.B.R. 2004-1 and Fed.R.Civ.P. 45 (the "Motion"). As grounds for the Motion, Lane states as follows:

1.     Matthew Curtis Witt (the "Debtor"), filed for protection under Chapter 7 of the Bankruptcy Code on August 17, 2017 (the "Petition Date").

2.     Tom H. Connolly is the duly appointed Chapter 7 trustee (the "Trustee") of the Debtor's bankruptcy estate.

3.     David Kahn's ("Kahn") Ex Parte Motion for 2004 Order Pursuant to FED.R.Bankr.P 2004, 9016, L.B.R. 2004-1 and Fed.R.Civ.P.45 ("Motion") has been granted.

4.     Lane is a party of interest and a related party to David Kahn's Ex Parte Motion for 2004 Order Pursuant to FED.R.Bankr.P 2004, 9016, L.B.R. 2004-1 and Fed.R.Civ.P.45. Lane and Kahn are parties to an Information and Box Sharing Agreement dated February 26, 2016 ("Box Agreement"), (*See* Exhibit A). The Box Agreement references Lane's possession of 44 boxes of alleged original documents withheld from the trustees for 09-17238-MER and 09-17437-MER by Debtor. Lane maintains these 44 boxes contain amongst other evidence, incriminating personal documents and records of the Debtor ("Debtor Documents"). Debtor has indirectly identified the importance of the Debtor Documents to the matters at hand in written statements to Kahn (*See* Exhibit B). This includes but is not limited to his seemingly desperate attempt to settle with Kahn over his outstanding lien liability to Kahn (*See* Exhibit B).

1

5.     Debtor has issued a subpoena to Kahn and Lane for Debtor Documents (*See* Exhibit D).

6.     Lane is a party of interest and a related party to Rekon, LLC ("Rekon") v. Matthew Curtis Witt in adversary proceeding 17-1548-MER.  Lane and Rekon are parties of interest  and parties to a lien collection agreement dated March 18, 2014 ("Rekon Agreement"), *See* Exhibit E, which purpose is to collect judgment(s) liens arising from the bankruptcies of Commercial Capital, Inc., 09-17238-MER ("CCI") and CCI Funding #1, LLC, 09-17437-MER ("CCIF") .  Lane and Kahn are subjects of Rekon's subpoena of Kahn and Lane in Rekon's SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING), 17-1548-MER.

7.     Rekon has issued a subpoena to Lane and Kahn for the Debtor Documents (*See* Exhibit C).

8.     Lane, Kahn, and Rekon are parties of interest and related parties in David Kahn's Ex Parte Motion for 2004 Order Pursuant to FED.R.Bankr.P 2004, 9016, L.B.R. 2004-1 and Fed.R.Civ.P.45.

9.     Lane, Kahn, and Rekon are parties of interest and related parties to Rekon's SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING), 17-1548-MER.

10.    The subject matter documents of the Rekon subpoena and the Debtor's subpoena in 17-17630-MER and related cases is 44 boxes of alleged original CCI and CCIF bankruptcy documents and Witt personal and business records, Box Agreement, withheld from the trustees in 09-17238-MER and 09-17437-MER.

11.    Upon information and belief, the 44 Boxes requested by the bankruptcy subpoenas (*See* Exhibits C and D), contain among other CCI and CCIF documents, original loan documents Witt allegedly hid from the Trustees in furtherance of Witt's conspiracy to commit fraud and Witt's commission of fraud upon Lane during the course of operating Witt's business(s), and during his filing for business and personal bankruptcy protection.

12.    Upon information and belief, Witt hid these 44 boxes in a ministorage rental unit and intentionally failed to pay the rental unit storage fee in the misinformed understanding that the contents of the ministorage would be destroyed if the storage fee was not paid.

13.    Upon information and belief, Kahn, a party who was also an investor in Witt's bankrupt commercial lending business, obtained the Boxes in a public auction of the Witt storage unit contents after Witt abandoned the contents. Kahn obtained the Boxes upon the recommendation of an 18th Judicial District Assistant District Attorney investigating Witt and his companies in the matters of arson at 5301 University, Greenwood Village.  The arson investigation of Witt and Denver Haslam is still an open investigation.

14.     Lane obtained the Boxes from Kahn on or about 2/16/2016 as consideration for the pickup, inventorying, partial cataloguing, and storage of approximately 44 Boxes for in excess of three years.  The Boxes contain among other things, original loan and commercial lending documents of CCI and/or CCIF allegedly hidden from the Trustees by Witt.  The Boxes are in Lane's possession and control at a location to be disclosed by court order.  The Boxes were offered to Plaintiff Witt and Defendant Rekon and all parties to 2017-cv-31212 and 16-cv-01303-KMT on numerous occasions and conferral throughout the proceedings of both matters.  All parties to 2017-cv-31212 and 16-cv-01303-KMT refused Lane's offer each and every occasion the offer was made.

15.     Lane has been repeatedly named a defendant by Debtor in state court matters and federal court matters allegedly centered on frustrating the collection of secured and/or judgment liens against Debtor and others arising from the bankruptcies of Commercial Capital Inc. and CCI Funding #1, LLC.  Debtor was the President and sole shareholder of CCI.  The Debtor's bankruptcy case numbers in the CCI matter are 09-17238-MER and 09-17437-MER.  The Debtor named Lane a defendant in case numbers 16-cv-01303-MSK-CBS and 2017-cv-31212 when Debtor claimed Lane and six others, and Lane and eleven others respectively, were involved in a conspiracy among other claims made by Debtor, to collect secured liens against Debtor, Debtor's wife Nicole Witt ("NWitt"), and other entities controlled by Debtor and NWitt.

16.     Lane seeks authority to conduct an examination of Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. and any other named entities discovered during examination that were allegedly used to hide assets, pursuant to Fed.R.Bankr.P. 2004. The proposed examination of Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. shall include inquiry into the Debtor's and other examinees' financial transactions prior to the bankruptcy petition which may directly impact the administration of the estate and claims for fraudulent conveyance.

17.     Fed.R.Bankr.P. 2004(a) provides that on motion of any party in interest, the court may order the examination of "any entity." The term "entity" includes persons such as Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. 11 U.S.C. § 101(15). The motion may be heard ex parte. See Advisory Committee Note to Fed.R.Bankr.P. 2004.

18.     The scope of Fed.R.Bankr.P. 2004(b) is very broad with respect to "discovering assets, examining transactions, and determining whether wrongdoing has occurred." In re Stecker, 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (citation omitted). It is well-established that the scope of an examination under Bankruptcy Rule 2004 is unfettered and broad. In re Vantage Petroleum Co., 34 B.R. 650, 651 (Bankr. E.D.N.Y. 1983). Indeed, the examination can "legitimately be in the nature of a fishing expedition". In re M4 Enterprises, Inc., 190 B.R. 471, 474 (Bankr. N.D. Ga. 1995). See also, In re Valley Forge Plaza Assocs., 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990) ("Rule 2004 permits a party invoking, it to undertake a broad inquiry of the examiner, in the nature of a

fishing expedition"); In re Frigitemp Corp., 15 B.R. 263, 264 n.3 (Bankr. S.D.N.Y. 1981) (noting that predecessor to Rule 2004 examinations have been likened to "fishing expeditions").

19. In conjunction with the examination of the Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc., Lane seeks to compel the production of certain records, pursuant to Fed.R.Bankr.P. 9016, which Creditor believes are in the deponent's possession, custody, or control. A summary of the proposed documents to be produced is attached hereto as Exhibit F. The proposed order is incorporated herein by reference.

20. Lane believes that it is necessary to obtain documentation regarding the financial transactions of Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc., from January 1, 2006 through the date of the bankruptcy petition as he believes Debtor may have hidden or unreported assets. Lane requests that the Court require Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. to produce certain documents listed in Exhibit A and allow the issuance of a subpoena duces tecum on Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. to verify the accuracy of the produced documents as well as other relevant matters.

21. Fed.R.Bankr.P. 2004(d) provides that the Court may, for cause shown and on terms as it may impose, order the Debtor and any entity having information concerning the Debtor to be examined at any time or place it designates, whether within or without the district wherein the case is pending. The scope of the examination under Rule 2004 may relate to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the estate or the debtor's right to a discharge.

22. Due to the extent of the documents requested, Lane requests that Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. be required to produce the documents at the undersigned's office located at 1060 Ingalls Street, Lakewood, CO 80214 within 14-days of issuance of an Order by this Court granting this Motion for Bankr.R. 2004 examination.

23. Lane requests that the Court compel the Rule 2004 examination of Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. sought herein within four weeks of the Order by this Court granting this Motion for Bankr.R. 2004 examination.

WHEREFORE, Noel West Lane III respectfully requests that the Court enter an order in substantially the same form as that attached hereto thereby authorizing Noel West Lane III and/or his counsel to compel production of the documents described herein and compelling Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. attendance at an examination to occur within four weeks of the Order granting this Motion, and for such other and further relief as to this Court may seem just and proper.

Respectfully submitted on March 8, 2019.

Noel West Lane III, In Pro se
1060 Ingalls Street
Lakewood, CO 80214
Phone Number: 303-697-0462

## Exhibits

**Exhibit A – Box Agreement**
**Exhibit B – Witt Email String; Attempt to Settle with Kahn**
**Exhibit C – Rekon Subpoena to Kahn and Lane vis-à-vis Box Agreement**
**Exhibit D – Witt Subpoena to Lane and Kahn vis-à-vis Box Agreement**
**Exhibit E – Rekon Agreement**
**Exhibit F – Exhibit A Instructions to Proposed Order for 2004 Examination by Lane**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on March 8, 2019, I filed the foregoing in person with the Clerk of the Court and mailed a copy of the filing by USPS to all counsel of record:

| Attorneys for | Attorneys and Address |
|---|---|
| Debtor | Charles S. Parnell<br>4891 Independence Street, Suite 240 Wheat Ridge, Colorado 80033 |
| Trustee | Tom H. Connolly<br>950 Spruce Street, Suite 1C<br>Louisville, Colorado 80027 |

Noel West Lane III, In Pro Se
1060 Ingalls Street
Lakewood, CO 80214

*Exhibit A - Box Agreement*

## INFORMATION AND BOX SHARING AGREEMENT

This agreement ("Agreement") is made and entered into as of this 26th day of February, 2016, by and between David Kahn ("Kahn" and/or "Disclosing Party") and Noel West Lane III ("Lane" and/or "Recipient") and no others (each a "Party," and collectively the "Parties").

**WHEREAS,** Disclosing Party, Kahn is willing to provide to Lane access to the contents of approximately forty-four (44) boxes ("Boxes") of files which are owned solely by Kahn, for the purpose of supporting their mutual interests.   The contents of the Boxes possibly contain records that may be related to business and/or personal records that could be of some value to either Party or the Parties.

**WHEREAS,** Lane is a party to a debt collection effort possibly involving entities related to the contents of the Boxes. **WHEREAS,** Kahn is a party to a debt collection effort possibly involving entities related to the contents of the Boxes.

WHEREAS, both Parties mutually agree that access to the boxes and the incremental payout schedule which is subject to and predicated upon Lane's successful collection activity proposed herein is sufficient consideration.

WHEREAS, both Parties agree that this Agreement is a mutual effort of both Parties and that subsequent debt collection by Lane if successful is not intended to enrich Kahn beyond the principal amount of Kahn's judgement separately or collectively which consideration is reflected in Kahn's incremental distribution(s) of collected debt always occurring first pursuant to the Section titled "Good and Valuable Consideration", of this Agreement.

**NOW THEREFORE,** Parties mutually agree on behalf of themselves and their affiliates, employees, officers, directors, representatives, agents, successors and assigns, as follows:

1. Any and all documents discovered that Receiving Party deems of interest, use, or benefit to either Party, shall immediately be communicated in writing to Disclosing Party.  Any documents discovered and disclosed, in writing, upon inspection of the Boxes by the Receiving Party shall not be shared by the Disclosing Party with Charlie Snider, Recon LLC or any members or associates ("Snider"), another individual with potentially conflicting interests, without advanced written consent of the Receiving Party.  This constraint shall stand for a period of 12 months. Any and all of the contents of the Boxes shall remain property of the Disclosing Party. Information discovered by Lane may only be used or shared with a third party with advanced written agreement by the Disclosing Party.

2. No disclosure or discussion of the contents of the Boxes shall grant the Receiving Party  any right or license to use, copy, transmit or otherwise disseminate associated findings without the express prior written permission of the Disclosing Party.

3. This Agreement shall be considered in full force and effect once both Parties have received a fully executed copy by hand delivery, postal mail, fax, or email.

4. <u>Governance.</u>  This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado.

5. <u>Term.</u>  This Agreement shall remain in full force and effect for a period of twenty (20) years commencing on the last date of execution when signed by both Parties.

6. <u>Injunctive Relief.</u> It is hereby understood and agreed that damages may be an inadequate remedy in the event of a breach of this Agreement, and that any breach will cause Parties irreparable harm and damage. Accordingly, the Parties agree that the Parties shall be entitled to injunctive and other equitable relief and shall be entitled to receive from the

1

## INFORMATION AND BOX SHARING AGREEMENT

other party all reasonable costs and expenses, including, without limitation attorney's fees and costs, without waiving any additional rights or remedies available at law or in equity or by statute.

7. <u>Enforceability.</u>  If any part, term or provision of this Agreement shall be held illegal, unenforceable, or in conflict with any law of the federal, state or local governments having jurisdiction over the Parties or the subject matter of this Agreement, the validity of the remaining portions or provisions of this Agreement shall not be affected thereby. Any failure by a Party to exercise any right, power or privilege hereunder shall not operate as a waiver thereof.

8. <u>Dispute Resolution.</u>  Should a dispute between the Parties arise, the prevailing Party shall be entitled to payment by the other Party for all reasonable fees, costs, expenses and/or legal fees, costs and expenses

9. <u>Good and Valuable Consideration.</u>  The Parties agree that should Lane's debt collection efforts be successful, whether through his direct efforts, through a 3rd party, or through an agent or agreement with another party, including, without limitation, Rekon, LLC (a Nevada LLC) or any/all entities related to Snider, then the following distribution of collected monies ("Staged Distribution") shall apply:

   a. Lane agrees to distribute any proceeds from Lane's debt collection efforts equally to Kahn and Lane, toward their respective principal and interest judgments, not to exceed Kahn principal amount identified herein plus accrued penalties and interest with Kahn being first in each distribution except that in no event of individual distribution to Kahn shall the total of the individual distribution to Kahn exceed more than half of the remaining undistributed amount recovered.
   b. Principal Payout.  All distributions to Kahn and, in turn, Lane shall be in increments of $25,000.00 first to Kahn and then $25,000.00 to Lane until Kahn has received a total of his judgment of $207,452 awarded on 6/4/2009 in distributions.
   c. Interest & Penalty Payout.  Once Kahn principal has been recovered in full and Lane has an amount equal to Kahn's principal distribution, the next $1,000,000 collected by Lane shall not be equally distributed to Kahn.  Thereafter, distributions shall resume, in turn, in increments of $25,000.00 first to Kahn and then $25,000.00 to Lane until Kahn has received a total of his 8% interest compounded annually plus penalties.
   d. Kahn and Lane mutually state and confirm that there are no third party obligations and/or agreements, or other circumstance(s) at ("Conflicting Circumstance") at the time of this Agreement being signed, which in any way shall encumber, slow or restrict the enforcement of this Agreement or the distribution(s) of any/all collections, if any.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date first above written, agree to be legally bound by the foregoing terms and conditions.

For: Lane
By:

2

## INFORMATION AND BOX SHARING AGREEMENT

*(signed name of Recipient)*

**Print Name:**  Noel West Lane III

**For: Kahn**

**By:** _____

*(signed name of Recipient)*

**Print Name:**  David Kahn

3

Exhibit *A* $\mathcal{B}$

Matthew C. Witt Email String Confirming Witt's Withholding of 44 boxes of Origin Commercial Capital,
Inc. Bankruptcy Files and Documents from Trustees in 09-17238-MER and 09-17437-MER

- **Provenance and No Rule 408 Established: Matthew C. Witt as President of Silver Leaf Mortgage, Email String forwarded to Noel Lane by David Kahn; No Rule 408 invoked.**
- **Matthew C. Witt Email String, 2/6/19 through and including 2/18/19 re: Kahn Lien Payments by M. C. Witt, Nicole Witt, and Silver Leaf Mortgage; No Rule 408 invoked.**
- **Matthew C. Witt Threat to Kahn and Witt Acknowledgement of *"importance"* of 44 Boxes on 2/18/19 at 1:04 PM; No Rule 408 invoked:**

"Can you immediately confirm that you will not sell the contents of the storage locker, or let anyone view them? I know what is in the locker, and it is highly personal records to me [1] and there is no reason that you or anyone else should have a right to that.

Please make a decision on what you are going to do, by 1:30 today, or I will be forced to protect myself and my family."

**From:** David Kahn <david.kahn@delta.solutions>
**Sent:** Monday, February 18, 2019 1:12 PM
**To:** Noel Lane
**Subject:** Fwd: Matt Witt

David Kahn
david.kahn@delta.solutions
(303) 900-3434

 DELTA

---------- Forwarded message ----------
**From: David Kahn** <email@davekahn.com>
Date: Mon, Feb 18, 2019 at 1:12 PM
Subject: Fwd: Matt Witt
To: Delta Contracts <contracts@delta.solutions>

David
(303) 900-3434

---------- Forwarded message ----------
**From: Matt Witt** <mattw@silverleafmortgages.com>

---

[1] Review of files contained in the file boxes of the 44 Boxes confirms that at least two of the 44 Boxes Matthew C. Witt claims, "…are highly personal to me.", are believed to in fact contain original loan and lending documents withheld from the Commercial Capital, Inc. and CCI Funding #1, LLC  bankruptcies filed by Witt in April 2009, as the President and sole shareholder of Commercial Capital, Inc.

8

Date: Mon, Feb 18, 2019 at 1:04 PM
Subject: RE: Matt Witt
To: David Kahn <email@davekahn.com>
David,

Can you immediately confirm that you will not sell the contents of the storage locker, or let anyone view them?  I know what is in the locker, and it is highly personal records to me, and there is no reason that you or anyone else should have a right to that.

Please make a decision on what you are going to do, by 1:30 today, or I will be forced to protect myself and my family.

In good faith I made you good offers to try and get you paid.

I would encourage you to stop this other BS that you are focused on, and focus on getting to an agreement that will get you paid.

Regardless,  please let me know your intentions by 1:30pm.

Matt

Matt Witt, President and Operations Manager
6972 S. Vine Street #366  |  Centennial, CO 80122

Office 720-458-4023  Fax 303-362-7812
Cell Phone 303-888-4531

Our Mission: To love and serve our clients well

mattw@silverleafmortgages.com
www.SilverLeafMortgages.com

Listen to: *Muni for Your Money – The Reverse Mortgage Show*
HOSTED BY KATHY MUNI & MATT WITT:          1220 AM and 95.3 FM  Thursday 1:30PM  &  Saturday
Legends 810 AM and 94.3 FM  Saturday  9AM

---

**From:** Matt Witt
**Sent:** Monday, February 18, 2019 12:36 PM
**To:** David Kahn
**Subject:** Re: Matt Witt

9

I'm sitting hete with my attorney.  Never mind wont work after you have threatened to sell this highly personal information about me to charley snider or noel lane.  Stipulate to me right now that you will not sell or let anyone view those documents, or i will have my attorneys rush down and file a lawsuit against you and get and emergency injunction.

What is wrong with you.  I made good offers to pay you, and you want to sell the debt to the people who have sworn lifelong revenge to family?

Why do you want to hurt me and my family?

I will sit idly by and take the extortion blackmail and intimidation.

Will you agree to take no action on selling those documents?

Do you want to agree to a payment and put this behind us.

Sent via the Samsung Galaxy S7, an AT&T 4G LTE smartphone

-------- Original message --------
From: David Kahn <email@davekahn.com>
Date: 2/18/19 12:17 PM (GMT-07:00)
To: Matt Witt <mattw@silverleafmortgages.com>
Subject: Re: Matt Witt

Never mind.
David
(303) 900-3434

On Mon, Feb 18, 2019 at 12:05 PM Matt Witt <mattw@silverleafmortgages.com> wrote:
How are the contents of the parker storage unit relevant to the timing?  What do you want? What did you pay for the storage unit contents.  I will reimburse you that amount you paid and in return you for the return for all of the documentation.  Who contacted you?

Sent via the Samsung Galaxy S7, an AT&T 4G LTE smartphone

-------- Original message --------
From: David Kahn <email@davekahn.com>
Date: 2/18/19 11:42 AM (GMT-07:00)
To: Matt Witt <mattw@silverleafmortgages.com>
Subject: Re: Matt Witt

I did not personally visit your unit, just had the boxes retrieved.

I am not asking for anything in particular.  I am sharing the information as it seems relevant to the timing of our stipulation discussion.

David
(303) 900-3434

On Mon, Feb 18, 2019 at 11:31 AM Matt Witt <mattw@silverleafmortgages.com> wrote: That is not truthful that you do not know where it was.

You have gone thru the storage unit.  What is in there that you have conveyed to noel lane Charley snider or David keil where they would want to buy it and use it against me?  Overall what are you asking for?

Sent via the Samsung Galaxy S7, an AT&T 4G LTE smartphone

-------- Original message --------
From: David Kahn <email@davekahn.com>
Date: 2/18/19 11:20 AM (GMT-07:00)
To: Matt Witt <mattw@silverleafmortgages.com>
Subject: Re: Matt Witt

I don't recall.

David
(303) 900-3434

On Mon, Feb 18, 2019 at 11:17 AM Matt Witt <mattw@silverleafmortgages.com> wrote: Where was it located?   Highlands ranch or parker or where?

Sent via the Samsung Galaxy S7, an AT&T 4G LTE smartphone

-------- Original message --------
From: David Kahn <email@davekahn.com>
Date: 2/18/19 10:41 AM (GMT-07:00)
To: Matt Witt <mattw@silverleafmortgages.com>
Subject: Re: Matt Witt

11

You had a storage unit that you stored 40 or so boxes from your CCI days.  From my memory, you had defaulted on the unit and I purchased it.

David
(303) 900-3434

On Mon, Feb 18, 2019 at 10:34 AM Matt Witt <mattw@silverleafmortgages.com> wrote:
What storage unit are you talking about?

Sent via the Samsung Galaxy S7, an AT&T 4G LTE smartphone

-------- Original message --------
From: David Kahn <email@davekahn.com>
Date: 2/18/19 8:01 AM (GMT-07:00)
To: Matt Witt <mattw@silverleafmortgages.com>
Subject: Re: Matt Witt

I've been contacted about interest in purchasing the lien and/or boxes from the storage unit.  Do you have input regarding that?

David
(303) 900-3434

On Sun, Feb 10, 2019 at 10:53 AM Matt Witt <mattw@silverleafmortgages.com> wrote:
Hi David,  thats fine to put the proposals on hold.  But I think it would make sense to have Charles request a hearing to finalize.  In two weeks if your counsel has questions then it may take considerable time to complete.
Matt

Sent via the Samsung Galaxy S7, an AT&T 4G LTE smartphone

-------- Original message --------
From: David Kahn <email@davekahn.com>
Date: 2/10/19 10:48 AM (GMT-07:00)
To: Matt Witt <mattw@silverleafmortgages.com>
Subject: Re: Matt Witt
 I'm reviewing Charles Parnell's proposed stipulation.  Given my access to my legal counsel, it will take longer than Charles has proposed, but I am motivated to move that forward as soon as possible.  Likely a couple of weeks needed.

Let's address your communication once the stipulation is finalized.

David
(303) 900-3434

---

On Wed, Feb 6, 2019 at 5:43 PM Matt Witt <mattw@silverleafmortgages.com> wrote:
David:

I have decided to communicate with you directly about how I can get the money you are owed paid. Please work with Charles Parnell to have the bankruptcy court enter an order setting the amount of your lien that survives bankruptcy at $89,082.50. Otherwise, Charles will not be part of these negotiations.

I understand that you want to be paid the full amount you are owed now, but I do not have the ability to pay that kind of money in a lump sum. I want this matter resolved, and I am making proposals on what I can realistically do financially.

My offers are based on certain parameters. I understand that you have been advised as a matter of law you are not entitled to interest. Your remedy is to start a foreclosure, by filing a lawsuit that would be costly and complicated by the fact I only own a half interest in my home, the mortgage has to be paid and I have to be paid my homestead amount for any foreclosure to occur, not including Nicolle's half of the interest in the home. You would not be entitled to recover any of your attorney fees or other costs. I will also of course never allow my family's home to go to foreclosure. Nicolle and I would be forced to continue to use bankruptcy protection to protect us from creditors as yourself if you started the process of foreclosure. In bankruptcy protection, we could take 5 years at no interest to pay your lien, roughly $1483 per month. Starting a foreclosure under the present circumstances will defeat the purpose of getting you paid as quickly as possible, by impairing my ability to refinance and draw on the equity in my home. My proposals strengthen your position, and would make it easier for you to foreclose if it became necessary. So I hope you give them consideration and consult with legal counsel.

Any agreement we reach will be documented in a well written contract to protect both of us, by an attorney. These are the three options:

1. I can begin paying you $1,500 per month, which will get you paid off in five years. I can start this plan and make a payment next week, but it has to be conditioned on your written agreement to not start a foreclosure. I am not going to give you money that you might turn around and use to fund a foreclosure against my home.

2.  The second option involves a couple of steps to execute, but pays you off in less than 3 years. With the help of others who will loan me the money, I can pay you $30,082.50 immediately. In addition, my wife Nicolle, who has a 23-year job with Hormel will personally guarantee the remaining balance you are owed.  This gives you a source of payment that you do not currently have.  You will be required to release your judgment lien immediately, and we will replace the judgment with a Note and Deed of Trust.

This is immensely beneficial to you:  (1) You end up with Nicolle's guarantee; (2) the Deed of Trust will give you a lien on the entire property rather than just half; (3) language in the Deed of Trust waives the homestead exemption; (4) a Deed of Trust is much easier to foreclose through the Public Trustee's office than filing a lawsuit for a judicial foreclosure; and (5) with a Deed of Trust you can recover attorneys' fees and costs.

This option will require that you not record the Deed of Trust for 30 to 60 days to allow a refinance of the property.   In that time period, I will refinance my mortgage and pay you an additional $30,000.   At that time, we will replace the Note and Deed of Trust with documents showing the outstanding balance as $29,000, and you can record the Deed of Trust.  The remaining balance will be paid off with $1,000 monthly payment for 29 months. I will pay the cost of recording the Deed of Trust.

I realize under this option there will be a short period of time where your lien will not be recorded. But, you will be protected by our legal contract, and I am certainly not going to do anything that puts my wife in the position of being accused of fraud, and the legal contract can expand on this. We simply cannot refinance to get you the additional $30,000 with your lien recorded.

3.  The third option is that I use the borrowed funds to pay you $30,082.50 now and pay you $3,000 per month thereafter.   You will be required to release your lien, but will receive Nicolle's personal guarantee and a Note and Deed of Trust for the remaining $69,000 balance.  This option gives you less money up front but pays you off in less than 2 years.

The following terms apply to all three options:

a.   If the Witt's have financial hardship, the monthly payments can be reduced to $1,000 per month, but interest will then begin to accrue at 8.0% per annum and continue until you are paid in full.

b.   You will not attempt to foreclose as long as the Witt's comply with the terms of their agreement with you.

c.   You will not receive any financial statements, loan documents or any other private financial information from the Witts.

d.   You will agree that the debt owed to you, either in the form of your judgment lien or a Note and Deed of Trust, cannot be transferred to any third party without the written consent of the Witts.

David, I look forward to coming to an amicable agreement with you.

Kind Regards,

Matt

**Matt Witt, Operations Manager**
**6972 S. Vine Street #366 I Centennial, CO 80122**

**Office 720-458-4023  Fax 303-362-7812**
**Cell Phone 303-888-4531**

Our Mission: To love and serve our clients well

mattw@silverleafmortgages.com
www.SilverLeafMortgages.com

Listen to: *Muni for Your Money -- The Reverse Mortgage Show*
HOSTED BY KATHY MUNI & MATT WITT:          1220 AM and 95.3 FM  Thursday 1:30PM
&  Saturday 2PM
Legends 810 AM and 94.3 FM  Saturday  9AM

**Exhibit C**

Plaintiff Rekon, LLC Subpoena for 44 Boxes of Matthew C. Witt Original CCI Bankruptcy Files 17-1548
MER

| | |
|---|---|
| In re   MATTHEW CURTIS WITT | District of  Colorado |
| Debtor | |
| *(Complete if issued in an adversary proceeding)* | Case No.  17-17630-MER |
| REKON, LLC | Chapter   7 |
| Plaintiff | |
| v. | |
| MATTHEW CURTIS WITT | Adv. Proc. No.  17-1548-MER |
| Defendant | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: David Kahn, 1114 Neon Forrest Circle, #2, Longmont, CO 80504; E-mail: email@davekahn.com
*(Name of person to whom the subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE   Allen Vellone Wolf Helfrich & Factor P.C.<br>Attn: Rachel A. Sternlieb<br>1600 Stout Street, Suite 1100, Denver, CO 80202 | DATE AND TIME<br>Within 10 days of the date of<br>service of this subpoena |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 02/20/2019

CLERK OF COURT

OR

_____          *Rachel A. Sternlieb*
Signature of Clerk or Deputy Clerk              *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
Plaintiff, Rekon, LLC            , who issues or requests this subpoena, are:   Allen Vellone Wolf Helfrich & Factor P.C.
Patrick D. Vellone & Rachel A. Sternlieb; 1600 Stout St., Suite 1100, Denver CO, 80202; pvellone@allen-vellone.com;  rsternlieb@allen-vellone.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
**(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)**

I received this subpoena for *(name of individual and title, if any):* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
...
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

# EXHIBIT A

## INSTRUCTIONS

1.    These document requests call for all documents in your possession, custody, or control, including documents which you have a right to secure from any source, including obtaining copies from any bank.  These sources include, but are not limited to, banks, subsidiaries, affiliates, agents, employees, attorneys, accountants, consultants, and advisors, and your agents, employees, attorneys, accountants, consultants, and advisors.

2.    If any responsive document was, but no longer is, in your possession or custody or subject to your control, and cannot be obtained from any source, please state what disposition was made of the document and the date or dates on which such disposition was made.

3.    The use of the singular includes plural, and vice versa.

4.    If you claim that any requested document (or portion thereof) is protected from disclosure by a privilege or other protection, please specify for each such document:
   a.  The date or approximate date of preparation;
   b.  The author(s);
   c.  Address(es);
   d.  The recipient(s);
   e.  The number of pages;
   f.  The name and business address of the custodian;
   g.  The subject matter of the document; and
   h.  The basis for the claim of privilege or other protection.

5.    If any document responsive to any request was at one time in existence, but has been lost, discarded, or is otherwise presently unavailable, identify such document as completely as possible, providing as much of the following information as possible:
   a.  type of the document;
   b.  its date;
   c.  the date or approximate date it was lost, discarded, destroyed, or became otherwise unavailable;
   d.  the reason or reasons for disposing of the document (if discarded or destroyed);
   e.  the circumstances and manner in which it was lost, discarded or destroyed;
   f.  the identity of all person(s) authorizing or having knowledge of the circumstances surrounding the disposal of the documents;

g. the identity of all person(s) who lost, discarded, or destroyed the document;

h. the identify of all person(s) having knowledge of the contents thereof; and

i. the request to which such document is responsive.

6.     If any answer responsive to these discovery requests is withheld under any claim of privilege or confidentiality, Debtor shall provide a provide a privilege log for each such Document, information, communication or thing which identifies the subject matter for which a privilege or confidentiality is claimed, including at least the following information:

a. nature and date of the subject matter;

b. author;

c. the person or persons to whom the subject matter was conveyed, either orally or in writing, together with their job title or position;

d. the basis upon which the privilege is claimed; and

e. the request to which each claim of privilege responds.

7.     If the response to any request consists, in whole or in part, of any objection(s) to the following discovery requests it must be stated and the reason(s) for the objection(s) set forth.

8.     If the response to any request consists, in whole or in part, of an objection relating to burdensomeness, then with respect to such response:

a. provide such information as can be ascertained without undue burden;

b. state with particularity the basis for such objection, including:

    i. description of the process or method required to obtain any fact

   ii. responsive to the interrogatory, and

  iii. the estimated cost and time required to obtain any fact responsive to the interrogatory.

c. describe the nature and extent of the documents or other source(s), if any, from which any fact responsive to the request can be obtained; and

d. state whether the documents or other sources will be made available for inspection and copying.

9.     If any document responsive to any request was at one time in existence, but has been lost, discarded, or is otherwise presently unavailable, identify such document as completely as possible, providing as much of the following information as possible:

a. type of the document;

b. its date;

c. the date or approximate date it was lost, discarded, destroyed, or became otherwise unavailable;

d. the reason or reasons for disposing of the document (if discarded or destroyed);

e. the circumstances and manner in which it was lost, discarded or destroyed;

f. the identity of all person(s) authorizing or having knowledge of the circumstances surrounding the disposal of the documents;

g. the identity of all person(s) who lost, discarded, or destroyed the document;

h. the identify of all person(s) having knowledge of the contents thereof; and the request to which such document is responsive.

## DEFINITIONS:

10.    The term "Debtor," "you" and "your" in Exhibit A shall mean David Kahn the answering party and any person acting or purporting to act or, at the time of the stated subject matter, was acting or purporting to act for or on behalf of David Kahn or anyone under its control, discretion, or instruction.

11.    The Phrase "Petition Date" shall refer to August 17, 2017, the date on which Matthew Curtis Witt (the "Debtor"), filed for protection under Chapter 7 of the Bankruptcy Code, case number 17-17630-MER.

12.    The word "identity" or "identify" when used with respect to a document: (1) the type of document or tangible thing (e.g., letter, memorandum, computer disk, or other document or tangible thing); (2) the date that it was created; (3) its author and signatories; (4) its addressees and all other persons receiving copies; and (5) the nature and substance of the document with sufficient particularity to enable it to be identified; and (6) its location and its custodian (or, if it is no longer within your possession, custody, or control, state what disposition was made of it; state the date of such disposition, identify every person who participated in or approved such disposition; and identify the person or persons having knowledge of its contents). In lieu of identifying documents in the foregoing manner, YOU may identify them by document number and produce such documents for inspection pursuant to C.R.C.P. 33(d).

13.    "Document," in either the singular or plural form, shall be construed in its broadest sense and shall be synonymous in meaning and equal in scope to the usage of this term in C.R.C.P. 34(a)(1). Document shall include, but is not limited to, the original or a copy (as well as any drafts) of any written, printed, typed, recorded or graphic matter, photographic matter, computerized records or programs, or sound, tape, videotape, wire or electronic recording within your possession, custody or control. This includes, without limitation, accounts, affidavits, agreements, books, calendars, charts, correspondence, diaries, drafts, drawings, emails, expense reports, faxes, graphs, invoices, letters, memoranda, minutes, motion pictures, newspaper

articles, notebooks, notes, papers, photographs, publications, purchase orders, receipts, records, reports, schedules, sketches, slides, speeches, statements, telephone messages, text messages, or other similar objects, and shall also include any kind of transcript, transcription, or recording of any conversation, oral statement, or presentation of any kind, as well as other tangible things on which words, figures, pictures, notations, or sound are recorded by any means, any such material underlying, supporting, or used in the preparation thereof, and any other Documents within Plaintiff's possession, custody, or control and electronically stored matter of every kind and description.

14.    "Relating to," "referencing," "referring to," and "relate" shall mean to consist of, pertain to, reflect on, arise out of, or be in any manner legally, factually, or logically, directly or indirectly, expressly or impliedly, connected with the matter requested.

15.    "Person" means the plural as well as the singular and includes a natural person, firm, association, organization, partnership, business, trust, corporation, public entity, or any other form of legal entity.

16.    The term "entity" includes any limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation.

17.    The word "identity" or "identify," when used with respect to a fact, means (1) describe the fact; (2) state when it became known to YOU; (3) identify the source from which YOU learned it; (4) identify the documents, record, show, or refer to the fact; and (5) state why you believe the fact is true.

18.    The term "entity" includes any limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation.

19.    "Produce" means, as set forth in C.R.C.P. 34(a)(1), to produce or permit the party making the request, or someone acting on the respondent's behalf, to inspect and copy any Document, or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of C.R.C.P. 26(b).

## REQUESTS FOR PRODUCTION OF
## DOCUMENTS FROM DAVID KAHN

1.    Please produce any and all documents, statements, notes, memoranda, files, and other materials relating to Matthew Curtis Witt that are contained in the approximately 44 boxes in your possession, custody or control, which you obtained from a storage unit or warehouse previously utilized by the Debtor.

*Exhibit D — Witt*
*Subpoena of*
*Lane*

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of Colorado
The Honorable Michael E. Romero

In re Matthew Curtis Witt

                           Debtor                                         Case No.17-17630 MER
                                                                          Chapter 7

Rekon, LLC

                           Plaintiff                                      Adv. Proc. No. 17-1548 MER
                               v.

Matthew Curtis Witt

                           Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To:  Noel West Lane III.

[X]  *Production*:  **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| PLACE:  Appel, Lucas & Christensen, P.C.: 1624 Market St., Suite 310, Denver, CO 80202, or at such other time and place as the parties may agree upon. | DATE AND TIME:  Within 14 days of service of this subpoena |
|---|---|

[ ]  *Inspection of Premises*:  **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 2/21/19

_____
*Attorney's signature*

The name, address, email address, and telephone number of the attorney representing Matthew Witt, who issues or requests this subpoena, are:  Appel, Lucas & Christensen, P.C.; 1624 Market St., Suite 310, Denver, CO 80202; (303) 297-9800; schristensen@appellucas.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed.  Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

---

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any):* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of  $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 3)

---

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
### (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii)      is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1)      *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person

**AMENDED EXHIBIT A**

**GENERAL INSTRUCTIONS AND DEFINITIONS**

1.      The term "document" or "documents" means all written or graphic communications, and all written or graphic materials of every kind and description, however produced or reproduced, whether draft or final, original or reproduction including, but not limited to the following: letters; correspondence; memoranda; minutes; e-mail or other electronic communications; notes; films; recordings of any type (mechanical, electronic, typed or written); transcripts; contracts; calculations; ledgers; computer tapes; cards and printouts; memoranda of telephone conversations; personal conversations or meetings; diaries; desk calendars; circulars; pamphlets; periodicals; manuals; drawings; diagrams; statements; notices; reports; maps; studies; statistics; telexes; telegrams; telefaxes; cables; disks; or diskettes; interoffice or intra-office communications; and any and all originals and non-identical copies or reproductions.

2.      The term "communication" means the transmittal of information in the form of facts, ideas, inquiries or otherwise, and specifically includes electronic mail.

3.      The term "person" means any natural person or any business, legal or governmental entity or association, including corporations, partnership, associations and joint ventures.

4.      The term "identify" (with respect to persons) requires a statement of all of the following information, to the extent known:  (a) the person's full name; (b) present employer and title, if any; (c) present or last known home address and telephone number; (d) present or last known occupation, employment and/or title, business address and telephone number; and (e) relationship, if any, to you.

5.      The term "identify" (with respect to a "person," when not an individual) requires a statement of all of the following information: (a) full name; (b) principal address; (c) telephone numbers of principal offices or facilities; and (d) name(s) of person(s) controlling or managing the entity or enterprise.

6.      The term "identify" (with respect to documents) requires a statement of all of the following information:  (a) title, type, or description of documents (e.g., letter, memorandum, report, etc.); (b) common name; (c) general subject matter(s); (d) date of the document; (e) author(s) and signator(s);  (f) recipient(s); name(s) and addressees) of each person having possession, custody or control of the document(s); (h) file number(s), code(s), or other identifying mark(s); and (i) all other information that serves to distinguish the document from other documents.

7.      The term "identify" (with respect to any "communication"), including any telephonic communication, requires a statement of all of the following information:  (a) the date

on which the communication occurred; (b) the identity of each and every person who was present during, or who participated in, the communication; (c) the subject(s) discussed; and (d) the identity of all documents concerning the communication.

## DOCUMENT PRODUCTION REQUESTS

1. Please produce any and all documents, statements, notes, memoranda, files, and other materials relating to Matthew Curtis Witt that are contained in the approximately 44 boxes in your possession, custody or control, which you obtained from a storage unit or warehouse previously utilized by you, David Kahn or by Commercial Capital, Inc.

2. Please produce any and all documents, records, statements, notes, memoranda, files, writings, electronically stored information, bank statements, account information and other materials relating in any way to Matthew Curtis Witt that are in your possession, custody or control.

3. Please produce any and all documents, records, statements, notes, memoranda, files, writings, electronically stored information, bank statements, account information and other materials relating in any way to Matthew Curtis Witt that are in your possession, custody or control that you obtained from David Kiel.

4. All documents related to the bankruptcy estate of Commercial Capital, Inc.

5. All communications related to the bankruptcy estate of Commercial Capital, Inc.

6. All documents related to any business you have conducted with Commercial Capital, Inc.

7. All communications related to any business you have conducted with Commercial Capital, Inc.

8. All documents related to Matthew C. Witt.

9. All communications related to Matthew C. Witt.

10. All documents you removed from the office of Commercial Capital Inc.

11. All documents that you received from or are holding for the benefit of David Kahn.

12. All communications you have had with David Kahn and court filings you have drafted on behalf of David Kahn.

13. All communications you have had with Charles Snider, Jr, his attorneys, and David Keil related to Commercial Capital Inc. or Matthew Witt.

*Exhibit E - Rekon Agreement*

# AGREEMENT

This Agreement is made by and between RhonLan, LLC ("Lane"), a Nevada limited liability company and Rekon, LLC ("Rekon"), a Nevada limited liability company and entered into on this 18th day of March 2014 ("Agreement").

**RECITTALS:**

**Whereas,** Rekon is the owner and holder of a certain assignment arising from claims against DENVER HASLAM ("Haslam Note Assignment") arising out of a promissory note executed on March 8, 2007 in favor of Commercial Capital, Inc. whose value is approximately $3,212,463.55 plus interest, etc. assigned to Rekon, LLC on February 14, 2014 by James Markus, Chapter 11 Trustee for Commercial Capital, Inc., and

**Whereas,** Rekon is the owner and holder of a certain assignment arising from claims against MATT WITT ("Witt Judgment Assignment") arising out of a Judgment whose value is approximately $1,636,458.34 plus interest, etc. assigned to Rekon, LLC on February 14, 2014 by James Markus, Chapter 11 Trustee for Commercial Capital Inc., and

**Whereas,** Rekon is the owner and holder of a certain assignment arising from claims against Denver Haslam ("Haslam Judgment Assignment") arising out of a Judgment being entered into Arapahoe County District Court being designated as District Court Civil Action 2012CV835 whose value is approximately $4,582,480.76 plus interest, etc. assigned to Rekon, LLC on March 18, 2014 by Noel West Lane III, Manager for Fall River Village Communities, LLC, and

**Whereas,** Rekon and Lane for good and valuable consideration, together entered into this Agreement for purposes of collecting the Assignments and,

**Whereas,** Lane and Rekon have agreed as follows:

1.     Rekon entered into separate Contingent Fee Agreements (" Fee Agreements") with RVM Law, LLC ("RVM") each for purposes of collecting on the Haslam Note Assignment, Witt Judgment Assignment, and Haslam Judgment Assignment (collectively "Assignments"), and

2.     Rekon has agreed that Rekon will pay all costs of collection and fees, etc. in accordance with the Fee Agreements entered into on March 18, 2014, and

3.     Lane will at all times keep Rekon informed of RVM filings, suggestions, and recommendations, cost estimates, etc, and all other matters that pertain to the Agreements and collection of the assignments, and

1

4.    Lane will manage all day to day activities of the Agreement including RVM coordination, invoice approval and payment, communications from and to RVM, document review, filing(s) review, etc. and maintain the books and records of the Agreement and Agreements, and

5.    Lane will confirm to RVM and Rekon by email all decisions of Rekon and Lane per the Agreement, and

**NOW THEREFORE:**

Rekon and Lane agree as follows with respect to any and all amounts collected in judgment or settlement of the Fee Agreements:

1.    After RVM has received its contingent fee for a Fee Agreement, Rekon will be first reimbursed for the costs and fees paid by Rekon for collection of a Fee Agreement, and

2.    Rekon and Lane will split the remaining amount of each Fee Agreement as follows:

    a.    Haslam Note Assignment

        Sixty (60%) percent to Lane
        Forty (40%) percent to Rekon

    b.    Witt Judgment Assignment

        Twenty (20%) percent to Lane
        Eighty (80%) percent to Rekon

    c.    Haslam Judgment Assignment

        Sixty (60%) percent to Lane
        Forty (40%) percent to Rekon

3.    **MODIFICATION:** This Agreement may not be modified, altered, or amended in any manner except by an agreement in writing executed by the parties hereto.

4.    **NOTICE:** All notices required to be given to Lane shall be deemed given when deposited in the United States Mail by certified mail, postage pre-paid to the following address:

    Rhonda L. Lane
    1060 Ingalls Street
    Lakewood, CO    80214

All written notices to Rekon shall be deemed given upon deposit in the United States Mail by certified mail, postage pre-paid to the following address:

> Charles D. Snider
> 2807 Kings Crossing Drive
> Kingwood. Texas 77345

or as otherwise directed in writing to Lane and Rekon.

IN WITNESS WHEREOF, the parties executed this Agreement this 18th day of March, 2014.

**RhonLan, LLC:**                                    REKON, LLC:

By: _____            By: _____
        (signature)                                        (signature)

   Rhonda L. Lane                              Charles D. Snider, Manager

3

## Exhibit F

Examination of the Debtor Matthew C. Witt, Nicolle Witt, Pinnacle Mastery, Ltd., Mile High Diesel, Inc., and Silver Leaf Mortgage, Inc. and summary of the proposed documents to be produced.

## EXHIBIT A
## INSTRUCTIONS

1. These document requests call for all documents in your possession, custody, or control, including documents which you have a right to secure from any source, including obtaining copies from any BANK. These sources include, but are not limited to, BANKS, subsidiaries, affiliates, agents, employees, attorneys, accountants, consultants, and advisors, and your agents, employees, attorneys, accountants, consultants, and advisors.

2. If any responsive document was, but no longer is, in your possession or custody or subject to your control, and cannot be obtained from any source, please state what disposition was made of the document and the date or dates on which such disposition was made.

3. The use of the singular includes plural, and vice versa.

4. If you claim that any requested document (or portion thereof) is protected from disclosure by a privilege or other protection, please specify for each such document:

    a. The date or approximate date of preparation;
    b. The author(s);
    c. Address(es);
    d. The recipient(s);
    e. The number of pages;
    f. The name and business address of the custodian;
    g. The subject matter of the document; and
    h. The basis for the claim of privilege or other protection.

5. If any document responsive to any request was at one time in existence, but has been lost, discarded, or is otherwise presently unavailable, identify such document as completely as possible, providing as much of the following information as possible:

    a. type of the document;
    b. its date;
    c. the date or approximate date it was lost, discarded, destroyed, or became otherwise unavailable;
    d. the reason or reasons for disposing of the document (if discarded or destroyed);
    e. the circumstances and manner in which it was lost, discarded or destroyed;
    f. the identity of all person(s) authorizing or having knowledge of the circumstances surrounding the disposal of the documents;

    g. the identity of all person(s) who lost, discarded, or destroyed the
      document;

    h. the identify of all person(s) having knowledge of the contents thereof; and

    i. the request to which such document is responsive.

6. If any answer responsive to these discovery requests is withheld under any claim
of privilege or confidentiality, Debtor shall provide a provide a privilege log for each such
Document, information, communication or thing which identifies the subject matter for which a
privilege or confidentiality is claimed, including at least the following information:

    a. nature and date of the subject matter;

    b. author;

    c. the person or persons to whom the subject matter was conveyed, either
      orally or in writing, together with their job title or position;

    d. the basis upon which the privilege is claimed; and

    e. the request to which each claim of privilege responds.

7. If the response to any request consists, in whole or in part, of any objection(s) to the
following discovery requests it must be stated and the reason(s) for the objection(s) set forth.

8. If the response to any request consists, in whole or in part, of any objection relating
to burdensomeness, then with respect to such response:

    a. provide such information as can be ascertained without undue burden;

    b. state with particularity the basis for such objection, including:

        1. a description of the process or method required to obtain any fact
          responsive to the interrogatory, and

        2. the estimated cost and time required to obtain any fact responsive to the
          interrogatory.

    c. describe the nature and extent of the documents or other source(s), if any,
      from which any fact responsive to the request can be obtained; and

    d. state whether the documents or other sources will be made available for
      inspection and copying.

9. If any document responsive to any request was at one time in existence, but has been
lost, discarded, or is otherwise presently unavailable, identify such document as completely as
possible, providing as much of the following information as possible:

    a. type of the document;

    b. its date;

    c. the date or approximate date it was lost, discarded, destroyed, or became
      otherwise unavailable;

    d. the reason or reasons for disposing of the document (if discarded or
      destroyed);

   e. the circumstances and manner in which it was lost, discarded or destroyed;

   f. the identity of all person(s) authorizing or having knowledge of the
      circumstances surrounding the disposal of the documents;

   g. the identity of all person(s) who lost, discarded, or destroyed the
      document;

   h. the identify of all person(s) having knowledge of the contents thereof; and

   i. the request to which such document is responsive.

## DEFINITIONS

10. The term "Debtor," "you" and "your" in Exhibit A-1 shall mean Matthew C. Witt
the answering party and any person acting or purporting to act or, at the time of the stated subject
matter, was acting or purporting to act for or on behalf of Debtor or anyone under his control,
discretion, or instruction.

11. The term "you" and "your" in Exhibit A-2 shall mean Nicolle S. Witt the
answering party and any person acting or purporting to act or, at the time of the stated subject
matter, was acting or purporting to act for or on behalf of Nicolle S. Witt or anyone under her
control, discretion, or instruction.

12. The term "you" and "your" in Exhibit A-3 shall mean Pinnacle Mastery, Ltd., the
answering party and any person acting or purporting to act or, at the time of the stated subject
matter, was acting or purporting to act for or on behalf of Pinnacle Mastery, Ltd. or anyone under
its control, discretion, or instruction.

13. The term "you" and "your" in Exhibit A-4 shall mean Mile High Diesel, Inc., the
answering party and any person acting or purporting to act or, at the time of the stated subject
matter, was acting or purporting to act for or on behalf of Mile High Diesel, Inc. or anyone under
its control, discretion, or instruction.

14. The term "you" and "your" in Exhibit A-5 shall mean Silver Leaf Mortgage, Inc.,
the answering party and any person acting or purporting to act or, at the time of the stated subject
matter, was acting or purporting to act for or on behalf of Silver Leaf Mortgage, Inc. or anyone
under its control, discretion, or instruction.

15. The Phrase "Petition Date" shall refer to August 17, 2017, the date on which
Matthew Curtis Witt (the "Debtor"), filed for protection under Chapter 7 of the Bankruptcy
Code, case number 17-17630-MER.

16. The word "identity" or "identify" when used with respect to a document: (1) the
type of document or tangible thing (e.g., letter, memorandum, computer disk, or other document
or tangible thing); (2) the date that it was created; (3) its author and signatories; (4) its addressees
and all other persons receiving copies; and (5) the nature and substance of the document with
sufficient particularity to enable it to be identified; and (6) its location and its custodian (or, if it
is no longer within your possession, custody, or control, state what disposition was made of it;
state the date of such disposition, identify every person who participated in or approved such

disposition; and identify the person or persons having knowledge of its contents). In lieu of identifying documents in the foregoing manner, YOU may identify them by document number and produce such documents for inspection pursuant to C.R.C.P. 33(d).

17. "Document," in either the singular or plural form, shall be construed in its broadest sense and shall be synonymous in meaning and equal in scope to the usage of this term in C.R.C.P. 34(a)(1). Document shall include, but is not limited to, the original or a copy (as well as any drafts) of any written, printed, typed, recorded or graphic matter, photographic matter, computerized records or programs, or sound, tape, videotape, wire or electronic recording within your possession, custody or control. This includes, without limitation, accounts, affidavits, agreements, books, calendars, charts, correspondence, diaries, drafts, drawings, emails, expense reports, faxes, graphs, invoices, letters, memoranda, minutes, motion pictures, newspaper articles, notebooks, notes, papers, photographs, publications, purchase orders, receipts, records, reports, schedules, sketches, slides, speeches, statements, telephone messages, text messages, or other similar objects, and shall also include any kind of transcript, transcription, or recording of any conversation, oral statement, or presentation of any kind, as well as other tangible things on which words, figures, pictures, notations, or sound are recorded by any means, any such material underlying, supporting, or used in the preparation thereof, and any other Documents within Plaintiff's possession, custody, or control and electronically stored matter of every kind and description.

18. "Relating to," "referencing," "referring to," and "relate" shall mean to consist of, pertain to, reflect on, arise out of, or be in any manner legally, factually, or logically, directly or indirectly, expressly or impliedly, connected with the matter requested.

19. "Person" means the plural as well as the singular and includes a natural person, firm, association, organization, partnership, business, trust, corporation, public entity, or any other form of legal entity.

20. The term "entity" includes any limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation.

21. The word "identity" or "identify," when used with respect to a fact, means (1) describe the fact; (2) state when it became known to YOU; (3) identify the source from which YOU learned it; (4) identify the documents, record, show, or refer to the fact; and (5) state why you believe the fact is true.

22. The term "entity" includes any limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation.

23. "Produce" means, as set forth in C.R.C.P. 34(a)(1), to produce or permit the party making the request, or someone acting on the respondent's behalf, to inspect and copy any Document, or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of C.R.C.P. 26(b).

**Exhibit A-1**

## REQUESTS FOR PRODUCTION OF DOCUMENTS FROM
## DEBTOR MATTHEW C. WITT

1. Produce a full and complete copy of any bank statements for any account held by you, whether held individually or jointly with any other person or entity since January 1, 2006 through the Petition date.

2. Produce a full and complete copy of all documents reflecting or related any real or personal property purchased from January 1, 2006 through the Petition date, with a purchase price in excess of $1,000.00, including but not limited to (a) marketable securities, (b) bonds, (c) mutual funds, (d) precious metals, (e) fractional interests in real estate or mineral rights, (f) commodities, livestock, or futures in commodities or livestock, and/or (g) jewelry, gems, and/or gold.

3. Produce a full and complete copy of any statements or any documents reflecting or related to any insurance policies, annuities, and/or leases for real or personal property from January 1, 2006 through the Petition date.

4. Produce a full and complete copy of any statements for any account for which you are an owner or a beneficiary in any way from January 1, 2006 through the Petition date, including but not limited to: (a) savings accounts, (b) certificates of deposit, (c) Individual Retirement Accounts, (d) 401(k) accounts, (e) Simplified Employee Pension Plan, (f) Roth accounts, (g) pension accounts, (h) annuities, and/or (h) profit sharing accounts.

5. Produce a full and complete copy of any credit card statements or accounts from January 1, 2006 through the Petition date.

6. Produce a full and complete copy of any document related to any investment in any entity, including but not limited to limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation from January 1, 2006 through the Petition date.

7. Produce a full and complete copy of any K-1 you received from any entity, including but not limited to limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation from January 1, 2006 through the Petition date.

8. Produce a full and complete copy, front and back, of any check written from any account you own or which you have any rights, which was made payable to your wife Nicolle S. Witt from January 1, 2006 through the Petition date.

9. Produce a copy of any loans for which you are the lender to any person or entity from January 1, 2006 through the Petition date.

10. Produce a copy of any loans for which you are the borrower from any person or entity from January 1, 2006 through the Petition date.

11. Produce a copy of your tax returns for each tax year including tax year 2006 through the Petition date.

12. Produce any documentation of any kind reflecting any gifts given and/or received in excess of $1,000.00 to or from any person or entity from January 1, 2006 through the Petition date.

## Exhibit A-2
## REQUESTS FOR PRODUCTION OF DOCUMENTS FROM NICOLLE WITT

1. Produce a full and complete copy of any bank statements for any account held by you, whether held individually or jointly with any other person or entity since January 1, 2006 through the Petition date.

2. Produce a full and complete copy of all documents reflecting or related any real or personal property purchased from January 1, 2006 through the Petition date, with a purchase price in excess of $1,000.00, including but not limited to: (a) marketable securities, (b) bonds, (c) mutual funds, (d) precious metals, (e) fractional interests in real estate or mineral rights, (f) commodities, livestock, or futures in commodities or livestock, and/or (g) jewelry, gems, and/or gold.

3. Produce a full and complete copy of any statements or any documents reflecting or related to any insurance policies, annuities, and/or leases for real or personal property from January 1, 2006 through the Petition date.

4. Produce a full and complete copy of any statements for any account for which you are an owner or a beneficiary in any way from January 1, 2006 through the Petition date, including but not limited to: (a) savings accounts, (b) certificates of deposit, (c) Individual Retirement Accounts, (d) 401(k) accounts, (e) Simplified Employee Pension Plan, (f) Roth accounts, (g) pension accounts, (h) annuities, and/or (h) profit sharing accounts.

5. Produce a full and complete copy of any credit card statements or accounts from January 1, 2006 through the Petition date.

6. Produce a full and complete copy of any document related to any investment in any entity, including but not limited to limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation from January 1, 2006 through the Petition date.

7. Produce a full and complete copy of any K-1 you received from any entity, including but not limited to limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation from January 1, 2006 through the Petition date.

8. Produce a full and complete copy, front and back, of any check written from any account you own or which you have any rights, which was made payable to your husband Matthew C. Witt from January 1, 2006 through the Petition date.

9. Produce a copy of any loans for which you are the lender to any person or entity from January 1, 2006 through the Petition date.

10. Produce a copy of any loans for which you are the borrower from any person or entity from January 1, 2006 through the Petition date.

11. Produce a copy of your tax returns for each tax year including tax year 2006 through the Petition date.

12. Produce any documentation of any kind reflecting any gifts given and/or received in excess of $1,000.00 to or from any person or entity from January 1, 2006 through the Petition date.

## Exhibit A-3
## REQUESTS FOR PRODUCTION OF DOCUMENTS FROM PINNACLE MASTERY, LTD.

1. Produce a full and complete copy of any bank statements for Pinnacle Mastery, Ltd., whether individually or jointly with any other person or entity from the date the entity was formed through the Petition date.

2. Produce copies of any and all meeting minutes of Pinnacle Mastery, Ltd. from the date the entity was formed through the Petition date.

3. Produce full and complete copies of any loans issued from Pinnacle Mastery, Ltd. to any person or entity from the date the entity was formed through the Petition date.

4. Produce full and complete copies of all distributions issued from Pinnacle Mastery, Ltd to any person or entity from the date the entity was formed through the Petition date. Distributions shall include, but is not limited to, dividends, compensation, advances, and/or bonuses.

5. Produce the tax returns or any informational returns generated or filed for Pinnacle Mastery, Ltd. from the date the entity was formed through the Petition date.

6. Produce any and all bank account ledger(s) for Pinnacle Mastery, Ltd. from the date the entity was formed through the Petition date.

7. Produce copies of any and all checks issued by Pinnacle Mastery, Ltd. from the date the entity was formed through the date you respond to the Petition date.

8. Produce a full and complete copy of all documents reflecting or related any real or personal property purchased by Pinnacle Mastery, Ltd., Inc. from the date the entity was formed through the Petition date, with a purchase price in excess of $1,000.00, including but not limited to (a) marketable securities, (b) bonds, (c) mutual funds, (d) precious metals, (e) fractional

interests in real estate or mineral rights, (f) commodities, livestock, or futures in commodities or livestock, and/or (g) jewelry, gems, and/or gold.

9. Produce a full and complete copy of any statements or any documents reflecting or related to any insurance policies, annuities, and/or leases for real or personal property of Pinnacle Mastery, Ltd. from the date the entity was formed through the Petition date.

10. Produce a full and complete copy of any statements for any account for which Pinnacle Mastery, Ltd. is an owner or a beneficiary in any way from the date the entity was formed through the Petition date, including but not limited to: (a) savings accounts, (b) certificates of deposit, (c) Individual Retirement Accounts, (d) 401(k) accounts, (e) Simplified Employee Pension Plan, (f) Roth accounts, (g) pension accounts, (h) annuities, and/or (h) profit sharing accounts.

11. Produce a full and complete copy of any credit card statements or accounts of Pinnacle Mastery, Ltd. from the date the entity was formed through the Petition date.

12. Produce a full and complete copy of any document related to any investment of Pinnacle Mastery, Ltd. in any entity, including but not limited to limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation from the date the entity was formed through the Petition date.

13. Produce a full and complete copy of any K-1 issued by Pinnacle Mastery, Ltd. from the date the entity was formed through the Petition date.

## Exhibit A-4
## REQUESTS FOR PRODUCTION OF DOCUMENTS FROM MILE HIGH DIESEL, INC.

1. Produce a full and complete copy of any bank statements for Mile High Diesel, Inc., whether individually or jointly with any other person or entity from the date the entity was formed through the Petition date.

2. Produce copies of any and all meeting minutes of Mile High Diesel, Inc. from the date the entity was formed through the Petition date.

3. Produce full and complete copies of any loans issued from Mile High Diesel, Inc. to any person or entity from the date the entity was formed through the Petition date.

4. Produce full and complete copies of all distributions issued from Mile High Diesel, Inc. to any person or entity from the date the entity was formed through the Petition date. Distributions shall include, but is not limited to, dividends, compensation, advances, and/or bonuses.

5. Produce the tax returns or any informational returns generated or filed for Mile High Diesel, Inc. from the first year the entity was formed through the Petition date.

6. Produce any and all bank account ledger(s) for any and all bank accounts of for Mile

High Diesel, Inc. from the date the entity was formed through the Petition date.

7. Produce copies of any and all checks, front and back, issued by for Mile High Diesel, Inc. from the date the entity was formed through the Petition date.

8. Produce a full and complete copy of all documents reflecting or related any real or personal property purchased by Mile High Diesel, Inc. from the date the entity was formed through the Petition date, with a purchase price in excess of $1,000.00, including but not limited to (a) marketable securities, (b) bonds, (c) mutual funds, (d) precious metals, (e) fractional interests in real estate or mineral rights, (f) commodities, livestock, or futures in commodities or livestock, and/or (g) jewelry, gems, and/or gold.

9. Produce a full and complete copy of any statements or any documents reflecting or related to any insurance policies, annuities, and/or leases for real or personal property of Mile High Diesel, Inc. from the date the entity was formed through the Petition date.
10. Produce a full and complete copy of any statements for any account for which Mile High Diesel, Inc. is an owner or a beneficiary in any way from the date the entity was formed through the Petition date, including but not limited to: (a) savings accounts, (b) certificates of deposit, (c) Individual Retirement Accounts, (d) 401(k) accounts, (e) Simplified Employee Pension Plan, (f) Roth accounts, (g) pension accounts, (h) annuities, and/or (h) profit sharing accounts.

11. Produce a full and complete copy of any credit card statements or accounts of Mile High Diesel, Inc. from the date the entity was formed through the Petition date.

12. Produce a full and complete copy of any document related to any investment of Mile High Diesel, Inc. in any entity, including but not limited to limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation from the date the entity was formed through the Petition date.

13. Produce a full and complete copy of any K-1 issued by Mile High Diesel, Inc. from the date the entity was formed through the Petition date.

### Exhibit A-5
### REQUESTS FOR PRODUCTION OF DOCUMENTS FROM
### SILVER LEAF MORTGAGE, INC.

1. Produce a full and complete copy of any bank statements for Silver Leaf Mortgage, Inc., whether individually or jointly with any other person or entity from the date the entity was formed through the Petition date.

2. Produce copies of any and all meeting minutes of Silver Leaf Mortgage, Inc. from the date the entity was formed through the Petition date.

3. Produce full and complete copies of any loans issued from Silver Leaf Mortgage, Inc. to any person or entity from the date the entity was formed through the Petition date.

4. Produce full and complete copies of all distributions issued from Silver Leaf Mortgage, Inc. to any person or entity from the date the entity was formed through the Petition date. Distributions shall include, but is not limited to, dividends, compensation, advances, and/or bonuses.

5. Produce the tax returns or any informational returns generated or filed for Silver Leaf Mortgage, Inc. from the date the entity was formed through the Petition date.

6. Produce any and all bank account ledger(s) for Silver Leaf Mortgage, Inc. from the date the entity was formed through the Petition date.

7. Produce copies of any and all checks issued by Silver Leaf Mortgage, Inc. from the date the entity was formed through the Petition date.

8. Produce a full and complete copy of all documents reflecting or related any real or personal property purchased by Silver Leaf Mortgage, Inc., Inc. from the date the entity was formed through the Petition date, with a purchase price in excess of $1,000.00, including but not limited to (a) marketable securities, (b) bonds, (c) mutual funds, (d) precious metals, (e) fractional interests in real estate or mineral rights, (f) commodities, livestock, or futures in commodities or livestock, and/or (g) jewelry, gems, and/or gold.

9. Produce a full and complete copy of any statements or any documents reflecting or related to any insurance policies, annuities, and/or leases for real or personal property of Silver Leaf Mortgage, Inc. from the date the entity was formed through the Petition date.

10. Produce a full and complete copy of any statements for any account for which Silver Leaf Mortgage, Inc. is an owner or a beneficiary in any way from the date the entity was formed through the Petition date, including but not limited to: (a) savings accounts, (b) certificates of deposit, (c) Individual Retirement Accounts, (d) 401(k) accounts, (e) Simplified Employee Pension Plan, (f) Roth accounts, (g) pension accounts, (h) annuities, and/or (h) profit sharing accounts.

11. Produce a full and complete copy of any credit card statements or accounts of Silver Leaf Mortgage, Inc. from the date the entity was formed through the Petition date.

12. Produce a full and complete copy of any document related to any investment of Silver Leaf Mortgage, Inc. in any entity, including but not limited to limited liability company, partnership, limited partnership, corporation, sole proprietorship, cooperative, and/or S Corporation from the date the entity was formed through the Petition date.

13. Produce a full and complete copy of any K-1 issued by Silver Leaf Mortgage, Inc. from the date the entity was formed through the Petition date.