UNITED STATES BANKRUPTCY COURT
District of Colorado

| | |
|---|---|
| In re: MATTHEW CURTIS WITT<br><br>Debtor.<br><br>Address: 2792 Greatwood Way<br>Highlands Ranch, CO 80126<br><br>SSN: XXX-XX-4130 | Case No.<br>17-17630-MER<br><br>Chapter<br>7 |

**REPLY TO MOTION FOR ORDER TO (1) SHOW CAUSE WHY NOEL LANE SHOULD NOT BE HELD IN CONTEMPT FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION, (2) DIRECTING NOEL WEST LANE III TO CEASE AND DESIST FROM ACTIVITIES DESIGNED TO COLLECT A DISCHARGED DEBT OR HARM THE DEBTOR AND HIS FAMILY**

Noel West Lane III, ("Lane") submits the following Reply to Defendant Matthew Curtis Witt's ("Witt") **MOTION FOR ORDER TO (1) SHOW CAUSE WHY NOEL LANE SHOULD NOT BE HELD IN CONTEMPT FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION, (2) DIRECTING NOEL WEST LANE III TO CEASE AND DESIST FROM ACTIVITIES DESIGNED TO COLLECT A DISCHARGED DEBT OR HARM THE DEBTOR AND HIS FAMILY** ("Motion") and Lane states as follows:

**CERTIFICATION OF CONFERRAL**

1. The undersigned certifies that no conferral occurred between Lane and Witt prior to this Motion being filed in 17-17630-MER by Law One, James Anderson and Joseph Elio, attorneys for Witt in 2017-cv-31212

**VIOLATION OF DUTY TO PRESERVE EVIDENCE (SPOILATION)**

2. Lane specifically objects to Witt's Motion because Witt's motion requests the Court to Order Lane to violate his duty to preserve evidence.

"Spoliation of evidence is an act that is prohibited by American Bar Association's Model Rules of Professional Conduct, Rule 37 of Federal Rules of Civil Procedure, and Title 18 United States Code."

1

3. Lane specifically objects to Witt's Motion because Witt's motion requests the Court to violate Lane's civil rights and right of due process by ordering Lane to destroy and/or surrender evidence necessary for Lane's appeal in 2017-cv-31212 ("Complaint"), which Complaint was brought against Lane in Colorado District Court (which followed Witt's filing of 16-cv-01303 KMT in Federal District Court followed again by Witt's filing bankruptcy in 17-11705-MER) by Witt seven days prior to Witt again filing for bankruptcy as a "repeat filer" in 17-17630-MER.

4. Lane specifically objects to Witt's Motion because Witt's motion requests the Court to violate Lane's civil rights and right of due process by ordering Lane to destroy evidence necessary for litigating the matters at issue in 17-1548-MER.

5. Lane specifically objects to Witt's Motion because Witt's motion requests the Court to violate Lane's civil rights and right of due process by ordering Lane to destroy evidence necessary for litigating the matters at issue in 09-17238-MER, 09-17437-MER, 17-17630-MER and 17-1548-MER.

6. Lane specifically objects to Witt's Motion because Witt's motion requests the Court to violate Lane's civil rights and right of due process by ordering Lane to destroy evidence necessary for proving Witt's alleged fraud upon Lane in the matters at issue in **1:09-cv-00724-DME-MEH** which are sealed and 09-17238-MER, 09-17437-MER and other related adversary proceedings. (*See* Exhibit A).

7. Lane specifically objects to Witt's Motion because Witt's motion violates Lane's civil rights and right of due process by requesting the Court to interfere with Lane's civil rights to report suspected crime and/or other civil violations to appropriate civil authorities.

## FACTUAL BACKGROUND

8. Lane herein incorporates by reference the following motions and their responsive pleadings as inclusive of the same matters at issue in the Witt Motion, which matters are "under advisement" by the Court:
    a) Ex Parte Motion for 2004 Order Pursuant to Fed.R.Bankr.P. 2004, 9016, L.B.R. 2004-1 and Fed.R.Civ.P. 45, Dkt. #s 169, 172, 173, 178, 179,
    b) Noel West Lane III Respectfully Moves this Court for an Order of Intervention Pursuant to Bankruptcy Rule 7024 which Incorporates Civil Rule 24 into Adversary Proceedings in Bankruptcy seeking discharge of debts pursuant to 11 U.S.C. § 523(a)(2)(A), Dkt. #s 76, 77, 78,
    c) Witt's Motion to Compel and Amended Reply to Defendant Matthew Curtis Witt's Motion to Compel Production of Documents from Noel West Lane III, Dkt. #195, and
    d) Rekon, LLC's Motion to Show Cause Why Noel West Lane III Should Not Be Held in Contempt of Court for Failure to Comply with Subpoena and Court Order for the Production of Documents and Lane's Reply, Dkt #195.

9. Lane herein incorporates Exhibit A by reference. Upon information and belief as confirmed by Lane, among other things, during Lane's investigation of the 44 Boxes, Lane hereby asserts that the sealed record in the matter **1:09-cv-00724-DME-MEH**, may contain evidence

clearly identifying Witt's conspiracy to commit fraud among other things against Lane in the matters of 09-17238-MER, 09-17437-MER and their related proceedings, including adversary, and 1:09-cv-00724-DME-MEH.

10. Lane denies Witt's assertion that Lane has violated or is violating 11 U.S.C. § 524 (a)(2), and as such denies Witt's assertions and/or allegations in paragraphs 3, 4, 5, 6, 10, 11, 13, 14, 15, 16, and 17.

11. Lane admits paragraph 1 and paragraph 7.

12. Lane admits that this Court has addressed the issue(s) again revisited by Witt in paragraphs 2, 8, and 9.

13. Lane asserts that this Motion in bankruptcy court and Witt's Motion to Dismiss Appeal for Lack of Jurisdiction filed on May 29, 2019 in Colorado Court of Appeals Case Number: 2019CA656, are tortured misrepresentations of partial facts, assertions, and allegations cobbled together for the purpose of forestalling discovery and production of evidence in Lane's allegations of fraud among other things against Witt in 1:09-cv-00724-DME-MEH and among other matters including 09-17238-MER, 09-17437-MER,17-1548-MER, and 2017-cv-31212.

## ARGUMENT

14. Local Bankruptcy Form 9013-1.2, Certificate of Service, is flawed. No FedEx Tracking Number is identified, therefore no proof of service occurred by FedEx.

15. Witt's Motion is flawed because Witt's Motion requests the Court to Order Lane to violate his duty to preserve evidence.

"Spoliation of evidence is an act that is prohibited by American Bar Association's Model Rules of Professional Conduct, Rule 37 of Federal Rules of Civil Procedure, and Title 18 U.S.C. § 1519 United States Code."

"Aside perhaps from perjury, no act serves to threaten the integrity of the judicial process more than the spoliation of evidence. Our adversarial process is designed to tolerate human failings— erring judges can be reversed, uncooperative counsel can be shepherded, and recalcitrant witnesses compelled to testify. But, when critical documents go missing, judges and litigants alike descend into a world of ad hocery and half measures—and our civil justice system suffers" [1]

16. Witt's Motion and his requested Orders in addition to being in violation of American Bar Association's Model Rules of Professional Conduct, Rule 37 of Federal Rules of Civil Procedure, and Title 18 United States Code, does not further the interests of the Court in carrying out the provisions of 11 U.S.C. § 105(a).

---

[1] United Medical Supply Co. v. United States, 77 Fed. Cl. 257, 259 (Fed. Cl. 2007).

3

17. Witt's Motion and his requested Orders in addition to being in violation of American Bar Association's Model Rules of Professional Conduct, Rule 37 of Federal Rules of Civil Procedure, and Title 18 United States Code, violates the Securities and Exchange Commission's Rules and Regulations regarding preserving evidence. Mortgage Pass-Thru Certificates fall under the rubric of "pooling and servicing agreements, PSA's". Persons and/or entities listed as creditors in 17-17630- MER including but not limited to Abbey Dreher on behalf of Creditor Bank of New York Mellon as Trustee for The Structured Asset Mortgage Investments, Inc. Mortgage Pass-Through Certificates Series 2003-AR3 co.ecf@bdfgroup.com Abbey Dreher on behalf of Creditor Bank of New York Mellon co.ecf@bdfgroup.com are governed by the Security and Exchange Rule and Regulations which also prohibit spoliation.

18. Witt misrepresents Judge Pilkington's Order to Confirm that 2017-cv-31212 is closed. Judge Pilkington's Order was not an administrative or clerical correction. Lane did object timely to Judge Pilkington's request to confirm 2107-cv-31212 closed.

19. Witt asserts Lane failed to file notice of appeal timely. Witt is incorrect in his assertion. Judge Pilkington's Order to Confirm Case Closed on or before February 21, 2019, automatically extended the time to appeal to start from the date of Judge Pilkington's reply to Lane's Objection to confirm case closed.

21. Witt asserts that Lane abuses his status as a pro se litigant. Witt is incorrect in his assertion. Lane's in pro se status is as a direct result of Witt's alleged fraud upon Lane and alleged fraud upon the Court(s).

22. Further, in all matters of Witt and Lane before Colorado District Court, Federal District Court, and United States Bankruptcy Court District of Colorado, Lane has complied with the Rules of Professional Conduct and the Rules of Civil Procedure, and responded where necessary to all orders issued by the court(s).

23. Finally, it is Witt's own actions of repeatedly filing complaints against Lane in multiple jurisdictions with multiple courts, followed by repeat filing of bankruptcy to avoid full litigation of Witt's claims made against Lane, that have necessitated and indeed caused Lane to file responsive pleadings including Motion for 2004 Examination, Motion to Preserve Evidence vis-à-vis the Box Sharing Agreement, 3rd Party Complaint, Colorado Supreme Court Judicial Notice, and Notice of Appeal among other filings, to protect and preserve Lane's civil and Constitutional rights from Witt's actions as a litigating party.

WHEREFORE, Lane respectfully requests the Court to deny Witt's **MOTION FOR ORDER TO (1) SHOW CAUSE WHY NOEL LANE SHOULD NOT BE HELD IN CONTEMPT FOR WILLFUL VIOLATION OF THE DISCHARGE INJUNCTION, (2) DIRECTING NOEL WEST LANE III TO CEASE AND DESIST FROM ACTIVITIES DESIGNED TO COLLECT A DISCHARGED DEBT OR HARM THE DEBTOR AND HIS FAMILY,** and for such other and further relief as the Court deems proper.

Respectfully submitted on May 30, 2019.

4

*[signature]*

Noel West Lane III, In Pro se
1060 Ingalls Street
Lakewood, CO 80214
Phone Number: 303-697-0462

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 30, 2019, I filed the foregoing in person with the Clerk of the Court and mailed a copy of the filing by USPS to all counsel of record:

| Attorneys for | Attorneys and Address |
|---|---|
| Debtor | Charles S. Parnell<br>4891 Independence Street, Suite 240 Wheat Ridge, Colorado 80033 |
| Trustee | Tom H. Connolly<br>950 Spruce Street, Suite 1C<br>Louisville, Colorado 80027 |
| Defendant(s) | Joseph M. Elio<br>1499 Blake Street, Ste. 1J<br>Denver, Colorado 80202<br><br>Kenneth J. Buechler<br>999 18th Street, Ste. 1230-S<br>Denver, CO 80202 |

*[signature]*

Noel West Lane III, In Pro Se
1060 Ingalls Street

Lakewood, CO 80214

**Exhibit**

5

**A – American Family Settlement; Denver Haslam Alleged Admission of Conspiracy to Commit Fraud Against Lane (Haslam 1/23/2012 Letter to AmFam and Paragraphs 2.7, 8.1.and 8.2 of Confidential Settlement Agreement and Mutual Release)**

January 23, 2012

L. Kathleen Chaney, Esq.
Counsel for American Family Mutual Insurance Company
Lambdin & Chaney, LLP
4949 S. Syracuse Street, Suite 600
Denver, CO 80237

Dear Ms. Chaney:

  I am writing to you with regard to certain claims that I approved being made in the lawsuit filed in the U.S. District Court arising out of damage to property located at 5301 S. University Blvd, Greenwood Village, Colorado. Emotions and accusations ran pretty high after the fire that occurred on November 6, 2008, and after American Family brought suit against me. When my claims were filed, I believed in good faith that the claims made against American Family were properly supported by the law and the facts.

  Since the date my claims were first filed, however, a lot of additional factual investigation, lawsuit discovery and legal briefing have occurred regarding those claims and the facts. As a result, I am directing my attorney to file a motion formally withdrawing and dismissing all of my claims against American Family in the U.S. District Court, and to withdraw all my defenses to American Family's request for declaratory judgment to void the insurance policy. I am in agreement with American Family to void the policy from its inception and agree to withdraw all claims previously made under that policy.

  Please feel free to share this letter with anyone, including anyone who might have questions about these claims and defenses that I asserted but which I am now taking steps to voluntarily withdraw and dismiss with prejudice.

Very truly yours,

*[signature]*

Denver Haslam

cc: Michael Connolly, Esq.

## CONFIDENTIAL SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This *Confidential Settlement Agreement and Mutual Release* (this *"Agreement"*) is made and entered into on this _____ day of January, 2012 (the "Effective Date"), by and between Denver Haslam and American Family Mutual Insurance Company, who will collectively be referred to as the "Parties," and either of them as a "Party."

**1. Definitions.**

As used in this *Agreement*, the masculine gender shall include the masculine, feminine and neuter, where applicable; the use of the singular includes the plural, where applicable, and the following terms shall have the following meanings:

1.1 "Agreement" means this *Confidential Settlement Agreement and Mutual Release.*

1.2 "American Family" means American Family Mutual Insurance Company, a Wisconsin insurance company.

1.3 The "Banks" mean OneWest Bank, FSB and Deutsche Bank National Trust Company.

1.4 "CCI" means Commercial Capital, Inc.

1.5 "Haslam" means Denver Haslam.

1.6 "Litigation" means the case captioned as follows:

Civil Action No. 1:09-cv-00724-DME-MEH
AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation, Plaintiff,
v.
DENVER HASLAM
COMMERCIAL CAPITAL, INC.
ONEWEST BANK, FSB
DEUTSCHE BANK NATIONAL TRUST COMPANY
Defendants;

DENVER HASLAM
COMMERCIAL CAPITAL, INC.
Counter-Claimants,
v.
AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,
Counter-Defendant;

COMMERCIAL CAPITAL, INC.

7

<pre>
                    ONEWEST BANK, FSB
                    DEUTSCHE BANK NATIONAL TRUST COMPANY,
                    FALL RIVER VILLAGE COMMUNITIES, LLC,
                    Cross-Claimants,
                    v.
                    DENVER HASLAM
                    COMMERCIAL CAPITAL, INC.
                    ONEWEST BANK, FSB
                    DEUTSCHE BANK NATIONAL TRUST COMPANY,
                    Cross-Claim Defendants.
</pre>

1.7 "Policy" means the policy issued by American Family, policy number 05-BQ7613-01 to Haslam, effective from May 20, 2008 to March 4, 2009, insuring the Property.

1.8 "Property" means that parcel of real property, and all improvements thereon, located at 5301 S. University Blvd., Greenwood Village, Colorado, which property is at issue in the Litigation.

1.9 "Claim" means the claim submitted to American Family for a fire that occurred at the Property on November 6, 2008.

2. **Recitals.**

2.1 The Property was a high-end home in Greenwood Village.

2.2 Haslam "purchased" the Property in March 2007.

2.3 The Property was in a completed state when Haslam took title to it.

2.4 Haslam's goal in obtaining the Property was to develop a business relationship with Mikel Mewbourn, someone who had experience in the real estate market, and use the equity in the Property to fund other potential projects.

2.5 Haslam did not put any money down or otherwise incur any cash outlays in connection with the Property.

2.6 Haslam never paid any taxes, utility bills, insurance premiums, or mortgage payments.

2.7 Although Haslam obtained a $3.2 million loan from Commercial Capital, Inc. ("CCI"), Haslam was informed by CCI's president, Matt Witt, that "it wasn't a loan that was ever to be paid back."

2.8 American Family issued the Policy to Haslam with dwelling limits of $4 million.

2

predecessors, successors, heirs, assigns, attorneys and re-insurers for, of and from any and all past, present of future claims, demands, obligations, causes of action, defenses, rights, damages, costs, liabilities, expenses, and compensation of any kind or nature whatsoever, whether for compensatory, exemplary or punitive damages, whether based on a tort, contract, statutory or other theory of recovery, including but not limited to breach of contract, bad faith breach of contract, statutory violations, common law claims and/or any other intentional or non-intentional tort, and including, but not limited to, claims for property damage, personal injury, bodily injury, business loss, loss of use and enjoyment, advertising injury, prejudgment interest, post-judgment interest, attorney fees, costs, whether or not known to Haslam that he may have had, now have or which may hereafter accrue or otherwise be acquired, on account of, or may in any way arise out of, or in any manner relating to:

    3.1.1   The Litigation;

    3.1.2   Any claim for damage or loss to the Property;

    3.1.3   Any event, cause or matter that is in whole or in part the subject of the Litigation, or related to or arising from the Litigation;

    3.1.4   Any matter relating to the Claim;

    3.1.5   Any insurance policy issued to or for the benefit of the Property or Haslam, any insurance proceeds potentially due under any such policy, and the handling of any claims under such policies;

    3.1.6   Any costs, expenses and attorney fees incurred in connection with the Litigation

    3.2   For and in consideration of the mutual covenants, promises and releases expressly contained in this *Agreement*, American Family and all its subsidiaries, affiliates, officers, directors, managers, members, agents, shareholders, employees, predecessors, successors, heirs, assigns, attorneys and re-insurers hereby completely release, acquit and forever discharge Haslam, for himself and on behalf of his respective estates, heirs, executors, administrators, personal representatives, trust beneficiaries, trust settlors, successors, agents, and assigns for, of and from any and all past, present of future claims, demands, obligations, causes of action, defenses, rights, damages, costs, liabilities, expenses, and compensation of any kind or nature whatsoever, whether for compensatory, exemplary or punitive damages, whether based on a tort, contract, statutory or other theory of recovery, including but not limited to breach of contract, bad faith breach of contract, statutory violations, common law claims and/or any other intentional or non-intentional tort, and including, but not limited to, claims for property damage, personal injury, bodily injury, business loss, loss of use and enjoyment, advertising injury, prejudgment interest, post-judgment interest, attorney fees, costs, whether or not known to Haslam that he may have had, now have or which may hereafter accrue or otherwise be acquired, on account of, or may in any way arise out of, or in any manner relating to:

    3.1.1   The Litigation;

4

2.9 American Family issued the Policy based upon an insurance application submitted to American Family in March 2008.

2.10 In the application, it was represented that the dwelling was not vacant, that the dwelling was not a secondary residence, and that Haslam did not have a property/liability policy canceled, non-renewed or rejected.

2.11 The application failed to disclose that the Property was not occupied, that there were third party interests, that Haslam had no real interest in the Property, and that the Property was an investment project rather than Haslam's primary residence.

2.12 The Parties agree that the representations in the application were material misrepresentations and/or omissions.

2.13 Someone set fire to the Property on or about November 6, 2008.

2.14 At the time of the fire, Haslam did not live in the home, and had never lived in the home.

2.15 The only items of personal property in the South University Property at the time of the fire were four bar stools, which were props used by CCI for taking photographs of the Property.

2.16 In the wake of the fire, the Parties involved have asserted claims against one another.

2.17 American Family commenced the Litigation on April 1, 2009 by filing its Complaint for Declaratory Judgment. American Family then filed its Amended Complaint on May 7, 2009. In the Amended Complaint, American Family sought, among other things, declaratory judgment adjudicating that the Policy was void, *ab initio*, based upon the fraudulent misrepresentations during the application process made by Haslam.

2.18 Haslam filed his Answer to the First Amended Complaint and Counterclaim on December 29, 2009, asserting, among other things, breach of contract, bad faith, willful and wanton conduct and statutory violations.

NOW THEREFORE, it is hereby agreed as follows:

**3.  Releases and Discharges.**

3.1 For and in consideration of the payment described in Section 4 below and the covenants, promises and releases contained in this *Agreement*, Haslam, for himself and on behalf of his respective estates, heirs, executors, administrators, personal representatives, trust beneficiaries, trust settlors, successors, agents, and assigns, hereby completely release, acquit and forever discharge American Family, specifically and expressly including its respective subsidiaries, affiliates, officers, directors, managers, members, agents, shareholders, employees,

3

3.1.2 Any claim for damage or loss to the Property;

3.1.3 Any event, cause or matter that is in whole or in part the subject of the Litigation, or related to or arising from the Litigation;

3.1.4 Any matter relating to the Claim;

3.1.5 Any insurance policy issued to or for the benefit of the Property or Haslam, any insurance proceeds potentially due under any such policy, and the handling of any claims under such policies;

3.1.6 Any costs, expenses and attorney fees incurred in connection with the Litigation.

3.3 Each of the Parties acknowledges and agrees that the releases set forth in this Section 3 are general releases. Each of the Parties expressly waives and assumes the risk of any and all claims which exist as of this date, but of which that Party does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect that Party's decision to enter into this *Agreement*.

4. **Consideration.**

4.1 In consideration of the mutual releases, covenants and promises herein, the sum of Five Hundred Thousand Dollars ($500,000) (the "Settlement Payment") shall be paid by American Family to Haslam and his attorney Michael Connolly, within ten (10) days of the date of receipt of this fully executed *Agreement*.

4.2 In consideration of the mutual releases, covenants, promises and Settlement Payment, Haslam agrees to the following:

4.2.1 Haslam agrees with American Family to void the Policy, *ab initio*;

4.2.2 Haslam agrees that a portion of the Settlement Payment is a return of the premiums paid for the Policy to rescind the Policy;

4.2.3 Haslam agrees that no portion of the Settlement Payment is paid under the Policy and, instead, agrees to withdraw any and all claims under the Policy related to the Property, including but not limited to the fire that occurred on November 6, 2008;

4.2.4 Haslam agrees to withdraw all defenses previously asserted to American Family's request for declaratory judgment to void the policy;

4.2.5 Haslam will cooperate with American Family and its counsel in the Litigation, including but not limited to: (a) meeting with American Family's counsel as reasonably may be required to prepare for trial and/or hearings and/or depositions in the

5

Litigation; (b) give advance notice to American Family's counsel of any meetings, telephone conferences, or communications with either CCI or its attorneys, or the Banks' or their attorneys related in any way to the issues in the Litigation, Claim, Property or Policy; (c) Haslam agrees to report to American Family's counsel any and all substantive discussions and communications that he may have with CCI or its attorney, or with the Banks or their attorneys related in any way to the issues in the Litigation, Claim, Property or Policy.

5. **Dismissal.**

5.1   Within five (5) days of the exchange of the Settlement Payment and the fully executed *Agreement*, American Family's counsel shall prepare and cause to be filed a motion wherein each party voluntarily withdraws claims against one another, dismissing the Litigation with prejudice.

6. **No Admission of Liability.**

6.1   The Parties understand and expressly agree that this settlement is a compromise of disputed claims, and that any payment made or release given is not to be construed as an admission of liability on the part of any settling Party, each of which expressly deny such liability. The Parties agree that any payment made under or in connection with this *Agreement* is not based on any claim under the Policy, nor does it represent any recovery of benefits under the Policy.

7. **Successors and Assigns.**

7.1   This *Agreement* shall inure to the benefit of and bind each of the Parties' past, present and future heirs, assigns, settlors, trustees, beneficiaries, agents, servants, representatives, employees, attorneys, insurers, reinsurers, partners, subsidiaries, divisions, affiliates, officers, directors, stockholders, assigns, predecessors and successors in interest, and all other persons or entities with whom any of the former have been, are now, or may hereafter be affiliated to the fullest extent the Parties may bind so bind these persons.

8. **Reconciliation Letter.**

8.1   Haslam agrees to fully execute the attached *Exhibit 1* (the "Reconciliation Letter") and to hand-deliver the <u>original</u> to Lambdin & Chaney, LLP simultaneously with the delivery of the signature pages to this *Agreement*. The Reconciliation Letter shall be executed prior to the execution of this *Agreement*.

8.2   The Reconciliation Letter, its existence and/or its substance, shall not be disclosed by American Family until after the Parties have fulfilled the conditions of this *Agreement* in Sections 4 and 5.